IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JAMES MICHAEL BOLGER, as the
personal representative of the estate
of JONATHAN J. BOLGER, deceased                                                       PLAINTIFF

V.                                                    CASE NO: 3:20-CV-3052

UNITED STATES OF AMERICA
and DAVID SULLIVAN, individually                                              DEFENDANTS

### MEMORANDUM OPINON AND ORDER
### DENYING MOTION TO DISMISS

Before the Court are a Motion to Dismiss and Brief in Support (Docs. 18 & 19) filed by the Government on behalf of Defendant David Sullivan. Plaintiff James Bolger filed a Response in Opposition (Doc. 24). The Court heard oral argument on the Motion during the case management hearing held on February 9, 2021. The Motion (Doc. 18) is ripe for decision, and for the reasons given below, it is **DENIED**.

### I. BACKGROUND

This case arises out of the death of Jonathan Bolger ("Mr. Bolger") in the early hours of August 20, 2017. Mr. Bolger was camping at the Spring Creek Campground in the Buffalo River National Forest, and was shot and killed by David Sullivan, who was in the campground in his capacity as a ranger in the National Park Service ("NPS"). James Bolger ("Plaintiff"), on behalf of his brother's estate, filed suit before this Court. The Amended Complaint alleges claims against the United States pursuant to the Federal Tort Claims Act. It also alleges a *Bivens* claim against Ranger Sullivan for violating Mr. Bolger's Fourth Amendment rights by shooting and killing him. The Government filed the instant Motion to dismiss the *Bivens* claim against Ranger Sullivan. The Motion argues

1

that Ranger Sullivan is entitled to qualified immunity because it was not clearly established on August 20, 2017, that his conduct was a violation of Mr. Bolger's constitutional rights.

Unsurprisingly, the parties disagree as to some of the key facts in the moments before Ranger Sullivan shot Mr. Bolger. For the purposes of this Motion, however, the Court assumes that the facts are true as pleaded by Plaintiff. Thus, the facts laid out are taken from the Amended Complaint in this matter (Doc. 4), without regard for Ranger Sullivan's competing testimony.[1]

Ranger Sullivan's shift began on August 19, 2017. Around 1:30 a.m. on August 20, Ranger Sullivan began to perform an after-hours sweep of the Spring Creek Campground on foot, accompanied by another ranger, Tim Cole. Both rangers carried large flashlights and were armed with guns. Mr. Bolger was at Campsite 3 in the campground and saw the flashlights approach through the darkness, though he did not know who carried them. Even as alleged in the Amended Complaint it is unclear whether Mr. Bolger held an air pellet gun as he approached the rangers. *See* Doc. 4, ¶ 104 ("When Sullivan and Cole shined their flashlights on Bolger, he likely had a pellet gun in his left hand . . . . Alternatively, Bolger had a flashlight on his person . . . ."). However, the Amended Complaint asserts that even if Mr. Bolger did have an air pellet gun in his hand

---

[1] The Government attached as exhibits to the Motion to Dismiss excerpts from Ranger Sullivan's interview with a special agent from the Investigative Services Branch of the NPS and an interview of Mr. Bolger's girlfriend by a sergeant from the county sheriff's office. *See* Docs. 18-1 & 18-2. In the Brief in Support, the Government argued that these documents are "necessarily embraced by the complaint" and "are not matters outside the pleading." (Doc. 19, p. 2 n.1). At the hearing, however, the Government conceded that the Court has to accept the facts as alleged in the Amended Complaint and not Ranger Sullivan's characterization of the facts.

when he encountered the rangers, it was always "pointed downward, toward the ground, and never in the direction of Sullivan or Cole." *Id.*

Ranger Sullivan was equipped with a body-worn camera ("BWC") that began recording approximately twelve seconds before he shot Mr. Bolger. Still images from that footage are included in the Amended Complaint. In the first image, Mr. Bolger initially shields his eyes from the beam of the flashlights with his right arm. His left arm is down at his side. It is not discernable from the image whether Mr. Bolger holds anything in his left hand. *See id.* at p. 24. He then lowers his right arm and turns to his left, reaching his right arm across his body toward his pickup truck, which is visible behind him and to his left. His left arm remains down at his side. *See id.* at p. 25. In the next image, Mr. Bolger continues to reach towards the door of his truck. His right side is toward Ranger Sullivan's BWC, right arm outstretched towards the truck, and his left arm and hand are not visible. *See id.* The footage then shows that Mr. Bolger reaches the door of the truck and begins to open it, pivoting his body so that his back is turned to Ranger Sullivan. His right arm and hand are visible on the door handle of the truck, and his left arm and hand are still not visible because of his angle to Ranger Sullivan's BWC. While Mr. Bolger's hand is on the door handle, the truck door is still closed. *See id.* at 26–27. This is the posture Plaintiff alleges Mr. Bolger was in when Ranger Sullivan shot him.[2] The Amended Complaint alleges that Ranger Sullivan did not give any warning before he shot Mr. Bolger, *id.* at ¶¶ 103 & 132, nor identify himself as law enforcement, *id.* at ¶¶ 111 & 131. Mr. Bolger died at the scene.

---

[2] It is further alleged that, according to the autopsy report, Mr. Bolger suffered one gunshot wound to the "lateral right abdominal flank" and one to the "right back." *Id.* at ¶ 134.

3

## II. LEGAL STANDARD

To survive a motion to dismiss, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In ruling on a motion to dismiss, the Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the nonmoving party." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (quotation marks omitted).

The same standard applies when the moving party asserts the defense of qualified immunity. "Qualified immunity protects public officials from § 1983 damage actions if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To determine if an official is entitled to qualified immunity, we must determine whether the alleged facts demonstrate that the official's conduct violated a constitutional right, and whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Groenewold v. Kelley*, 888 F.3d 365, 370–71 (8th Cir. 2018). "To prevail at this stage of the proceedings, defendants must show that they are entitled to qualified immunity on the face of the complaint." *Bradford*, 394 F.3d at 1015.

The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "For a right to be deemed clearly established, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Buckley v. Rogerson*, 133 F.3d 1125, 1128 (8th Cir. 1998) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). "[T]he issue is not whether prior cases present facts substantially similar to the present case but whether prior cases would have put a reasonable officer on notice that the use of deadly force in these circumstances would violate [the individual's] right not to be seized by the use of excessive force." *Craighead v. Lee*, 399 F.3d 954, 962 (8th Cir. 2005).

## III. DISCUSSION

The Government asks the Court to begin with the second prong of the qualified immunity analysis and find that it was not clearly established that Ranger Sullivan's conduct violated Mr. Bolger's Fourth Amendment rights. However, since the Government relies on Ranger Sullivan's version of the facts in its briefing and not Plaintiff's, its arguments and citations are inapposite. The Court might well agree that an officer is entitled to qualified immunity where, immediately before the decedent was shot, he "had in his possession a realistic looking handgun and refused to comply with [an officer's] commands to drop the weapon" and then "ma[de] a sudden move and reache[d]" in a threatening manner. (Doc. 19, p. 13). But that is not the appropriate inquiry here because

those are not the facts alleged in the pleadings. Rather, the Court finds that Plaintiff has carried his burden to plead that it was clearly established in August 2017 that Ranger Sullivan would violate Mr. Bolger's constitutional rights by shooting and killing him under the circumstances alleged.

Plaintiff directs the Court to *Cole v. Hutchins*, 959 F.3d 1127 (8th Cir. 2020), to support his position. In *Cole*, Officer Hutchins shot and killed Roy Richards. Richards had been fighting with his uncle, Darrell Underwood, and at some point before the police were called, displayed a gun. Underwood and Richards were fighting in Underwood's front yard when a neighbor announced that the police had arrived. The two men continued fighting for a few more seconds. Then Underwood went to his front porch, and Richards went to his vehicle and removed a gun. Richards then walked towards the porch, "holding the gun vertically facing either the sky or the ground." *Id.* at 1132. As Richards was approaching, Underwood went into the house and closed the door. Then Richards turned around and walked back towards his car. A few seconds later, Officer Hutchins shot and killed Richards.

The Eighth Circuit affirmed the district court's finding that Officer Hutchins was not entitled to qualified immunity. First, the Eighth Circuit held that it was objectively unreasonable for Officer Hutchins to have shot Richards given the facts before the court. In particular, the court emphasized that Richards' "gun [was] pointed either toward the ground or the sky," and he "was not pointing the weapon at Underwood or wielding it in an otherwise menacing fashion." *Id.* at 1133. The court also noted that the officer had failed to provide a warning before shooting "despite having five to ten seconds from when he saw Richards emerge from behind his vehicle with a gun" until the officer fired. *Id.*

6

The Eighth Circuit also emphasized that Richards was "visibly retreating" from Underwood's door at the time he was shot. *Id.* Based on these facts, the Eighth Circuit held that in the moment he shot Richards, "Officer Hutchins did not have probable cause to believe Richards posed an immediate threat of serious physical harm to Underwood," and shooting Richards under those circumstances violated Richards' Fourth Amendment rights. *Id.*

Second, the Eighth Circuit held that at the time the facts occurred, in October 2016, "it was clearly established that a person does not pose an immediate threat of serious physical harm to another when, although the person is in possession of a gun, he does not point it at another or wield it in an otherwise menacing fashion." *Id.* at 1134. An individual "seemingly in possession of a gun" nevertheless does not pose an immediate threat of serious bodily harm when "he does not raise it toward another or otherwise appear 'ready to shoot' in the moment." *Id.* at 1134 (quoting *Nance v. Sammis*, 586 F.3d 604, 611 (8th Cir. 2009)).

Here, Plaintiff alleges that Ranger Sullivan never identified himself as a law enforcement officer and never warned Mr. Bolger that he would shoot, despite the interaction lasting at least twelve seconds. He further alleges that Mr. Bolger was not holding a gun, or that if he was, he always kept it pointed at the ground and never pointed it at Ranger Sullivan. Finally, Plaintiff characterizes Mr. Bolger's movement toward his truck in the moments before he was killed as movement "away from Sullivan." (Doc. 4, ¶¶ 100 & 101). Therefore, Plaintiff has sufficiently alleged that even if Mr. Bolger was in possession of a gun, he did not point it or wield it in a menacing way, and it was clearly

established that by shooting Mr. Bolger under those circumstances, Ranger Sullivan violated Mr. Bolger's Fourth Amendment rights.

At the hearing, the Government argued that Ranger Sullivan could have reasonably perceived Mr. Bolger reaching for his truck door as a menacing action. The Court cannot reach such a conclusion, however, because this would require the Court to abandon the legal standard at this stage of the proceedings. In considering a motion to dismiss under Rule 12(b)(6), the Court is required to accept as true the facts as pleaded and make all reasonable inferences in the plaintiff's favor.

In *Partridge v. City of Benton*, 929 F.3d 562 (8th Cir. 2019), Officer Ellison shot and killed Keagan Schweikle. When Officer Ellison encountered Keagan, he was holding a gun. The officer then ordered Keagan to drop his gun. Instead, Keagan raised the gun to his own head. Officer Ellison directed Keagan to drop the gun again. Keagan began moving the gun away from his head, and Officer Ellison shot and killed him. On a Rule 12(c) motion for judgment on the pleadings, the district court granted the officer qualified immunity and dismissed the suit, concluding that "it would have 'been nearly impossible for Ellison to tell whether Keagan was moving the gun away from his head to comply with Ellison's order or if he was repositioning the gun to aim it at the officers.'" *Id.* at 565 (quoting the district court's opinion, 2018 WL 11216398, at *3 (E.D. Ark. Mar. 9, 2018)). The Eighth Circuit reversed, holding that "[t]his conclusion does not accept the facts in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* at 566. For the same reason, the Court declines to infer that a reasonable officer could have perceived Mr. Bolger's move away from the ranger and toward his truck to be a menacing action that presented an immediate threat to Ranger Sullivan.

In the alternative, the Government asks the Court to find that Ranger Sullivan's use of force was objectively reasonable. However, since the Court holds above that it was clearly established that Ranger Sullivan's alleged conduct violated Mr. Bolger's Fourth Amendment rights, the ranger's use of force is necessarily unreasonable.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Ranger Sullivan's Motion to Dismiss (Doc. 18) is **DENIED**.

**IT IS SO ORDERED** on this 23rd day of February, 2021.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE